1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON DANIEL VILLALOBOS, | Case No. 1:19-cv-00442-DAD-EPG |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| ARMENTA TIGGS-BROWN, P.A., | (ECF No. 42.) |
| Defendant. | |
| | OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

## I.      INTRODUCTION

Plaintiff Ramon Daniel Villalobos ("Plaintiff") is proceeding *in forma pauperis* through counsel in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated this action by filing a complaint on April 4, 2019. (ECF No. 1.) On December 9, 2019, Plaintiff filed a First Amended Complaint. (ECF No. 32.)

This case proceeds on Plaintiff's claims against Defendant Armenta Tiggs-Brown, P.A. ("Defendant"), for (1) deliberate indifference to serious medical needs in violation of the Eighth Amendment; and (2) retaliation in violation of the First Amendment. (ECF No. 36.) Plaintiff's claims arise from allegations that Defendant (1) failed to promptly refer Plaintiff to an orthopedic specialist after he broke his wrist; and (2) took Plaintiff off of his pain medications for lower back

1   pain after he filed a grievance against her. (*Id.*) Plaintiff's operative complaint requests an award

2   of compensatory, punitive, and nominal damages, plus expenses and interest. (*Id.*)

3        Before the Court is Defendant's motion for summary judgment. (ECF No. 42.) For the

4   following reasons, the Court recommends granting summary judgment in favor of Defendant.

5        **II.    UNDISPUTED FACTS[1]**

6        The Court has carefully reviewed the parties' submissions, including separate statements

7   of undisputed facts, supporting declarations, deposition testimony, and statements in the parties'

8   briefs.  The following facts are undisputed.[2]

9        On November 27, 2015, Plaintiff broke his left wrist during a football game on the prison

10  yard while incarcerated at the California Substance Abuse Treatment Facility and State Prison,

11  Corcoran ("SATF"). (Undisputed Material Facts "UMF" 11, 13, 14.) Plaintiff was taken to

12  medical at SATF to await an ambulance and was transferred from the prison to Mercy Hospital

13  where he saw Dr. Steven Shellans. (UMF 15, 17.) Plaintiff believes he received morphine or

14  Dilaudid and also received x-rays of his hand, a half cast on his wrist, and an order for pain

15  medications before being sent back to SATF. (UMF 18.) Plaintiff did not see Defendant on

16  November 27, 2015. (UMF 16.)

17       Plaintiff saw Defendant on December 2, 2015. (UMF 22.)[3] During Defendant's

18  examination of his wrist, Plaintiff was able to move all of the fingers on his left hand. (UMF 29.)

19  Defendant reviewed Plaintiff's medication and saw that he was on Tylenol #3, which was getting

20  ready to expire so she started him on anti-inflammatories. (UMF 32.) Defendant added Tylenol to

21  Plaintiff's treatment plan for mild to moderate pain. (UMF 34.)

22

23       [1] Because Plaintiff does not oppose summary judgment on his retaliation claim, the Court does not address
     facts related to that claim.

24
25       [2] To the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on
     evidence it considered to be admissible. Generally, it is not the practice of the Court to rule on evidentiary matters
     individually in the context of summary judgment. This is particularly true when "many of the objections are
26   boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of
     evidence." *Capital Records, LLC v. BlueBeat, Inc.*, 765 F.Supp.2d 1198, 1200 n.1 (C.D. Cal. 2010) (quoting *Doe v.*
27   *Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009)).

28       [3] Defendant contends that this was Plaintiff's first visit with her, and Plaintiff contends he also saw
     Defendant twice between November 28 and December 3, 2015. (UMF 22, 24.)

Plaintiff submitted a Health Care Services Request Form (CDC 7362) on January 2, 2016, because he had broken his cast on December 31, 2015. (UMF 38.) Plaintiff indicated that he was in a lot of pain and needed to be seen as soon as possible. (UMF 38.) Plaintiff was seen by Registered Nurse Dyksinski on January 4, 2016, who immediately sent him to Dr. Kokor in the Triage and Treatment Area. (UMF 39.) Defendant next saw Plaintiff on January 27, 2016, to follow up on his complaint of wrist pain. (UMF 40.) Defendant started Plaintiff on nonsteroidal anti-inflammatory drugs (NSAIDs) for pain management and ordered repeat x-rays of the wrist. (UMF 42, 43.) The x-rays Defendant ordered were taken on February 2, 2016, and Defendant received the x-ray results/report on February 4, 2016. (UMF 45, 46.) The report noted that the clinical indication for the x-rays was Plaintiff's report of pain from fracture. (UMF 47.) The report further noted findings of ulnar styloid process fracture with mild separation and nonunion, the carpus was intact, intercarpal relationships were maintained, and bone mineralization was normal. (UMF 47.)

On February 5, 2016, Defendant put in a request to refer Plaintiff to an orthopedist. (UMF 48.) Dr. David Smith, an orthopedist, saw Plaintiff at Delano Regional Medical Center on February 12, 2016. (UMF 53.) Given the fact that Plaintiff had a nonunion of an ulnar styloid fracture and was very symptomatic, the orthopedist recommended open reduction and internal fixation of the fracture. (UMF 54.) Defendant submitted a Health Care Services Physician Request for Services on February 17, 2016, for surgery on Plaintiff's wrist, which was approved on February 19, 2016. (UMF 55.) Defendant saw Plaintiff on February 23, 2016, for a follow up of his appointment with the orthopedist. (UMF 56.) Plaintiff had surgery on February 25, 2016, for excision of ulnar styloid left wrist. (UMF 57.)

### III.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant filed her motion for summary judgment on January 15, 2021. (ECF No. 42.) Defendant argues that she was not deliberately indifferent to Plaintiff's complaints of severe pain associated with his broken wrist. (*Id.* at 17-19.) Defendant contends that she:

- Saw Plaintiff for the first time on December 2, 2015, and examined Plaintiff's arm, wrist, and elbow on that date;

- Reviewed Plaintiff's medication on December 2, 2015, and added anti-inflammatories and Tylenol for mild to moderate pain;
- Saw Plaintiff again on January 27, 2016, started him on NSAIDs for pain management, and ordered repeat x-rays; and
- Referred Plaintiff to an orthopedist on February 5, 2016.

(*Id.* at 17-18.) Defendant argues that she did not deliberately ignore Plaintiff's wrist fracture at any time or delay proper treatment. (*Id.* at 19.) Defendant also moves for summary judgment on Plaintiff's First Amendment retaliation claim, arguing that she did not cut off Plaintiff's pain medication for his back in retaliation for his filing a grievance against her, and that decision was made by the Medical Authorization Review Committee. (*Id.* at 19-22.)

Plaintiff filed an opposition to the motion on March 18, 2021. (ECF No. 46.) Plaintiff did not present any arguments regarding his retaliation claim, and his opposition states that he agrees to dismiss the retaliation claim with prejudice. (ECF No. 46 at 2.) As to the deliberate indifference claim, Plaintiff argues that his broken wrist was a serious medical need, and "failure to treat a broken bone is commonly known to result in further significant, and permanent, injury." (*Id.* at 8.) Plaintiff disputes Defendant's version of the facts concerning when Defendant saw him and what occurred during those visits. (*Id.* at 11-13; ECF No. 46-3.) Plaintiff claims that:

- Plaintiff saw Defendant on November 30, 2015, and reported that he could still feel popping and grinding and was in an unusually astonishing amount of pain;
- Defendant told Plaintiff on that date that things will be fine, the hospital took care of him, things will get better, and the pain will subside, and he did not need to see a specialist;
- Plaintiff's wrist was not visible when he saw Defendant on December 2, 2015, and Defendant therefore could not have examined the wrist and determined whether it had swelling or anything abnormal;
- Plaintiff told Defendant he was in severe pain when he saw Defendant on December 2, 2015; and
- Defendant was ordered or directed to send Plaintiff for x-rays and to refer him to

4

1   an orthopedist after Plaintiff filed a grievance against her.

2   (ECF No. 46-3.)

3        Plaintiff also contends that he saw Defendant in early January of 2016, reported that his

4   pain was not going away, and asked for an MRI or a referral to someone who could examine his

5   muscles or tendons. (ECF No. 46 at 4.) Defendant dismissed Plaintiff's statements, and said "he

6   need not waste time seeing another doctor, because even the homeless people in LA experience

7   pain." (*Id.* at 4-5.) Plaintiff stormed out in anger but returned later, and Defendant told Plaintiff

8   that "I make the decisions, and there's no need for you to see another doctor." (*Id.* at 5.) When

9   Plaintiff asked for pain medication, Defendant said "Oh, that's what this is about? Pain meds? I

10  see." (*Id.*)

11       Plaintiff also argues that Defendant's delay in referring him to a specialist caused his left

12  arm to heal improperly. (ECF No. 46 at 14.) Plaintiff contends that his wrist is permanently

13  disfigured, he is unable to pull anything over fifteen to twenty-five pounds with that hand, and he

14  cannot bend his left wrist all the way back or fully rotate it. (*Id.*) Plaintiff alleges that Dr. Smith,

15  the orthopedist who performed his surgery, told Plaintiff that the delay "caused more instability,

16  weakness, and more damage to his wrist." (*Id.*) According to Plaintiff, there is a genuine dispute

17  of material fact as to which injuries Plaintiff experienced, and which ones were caused by

18  Defendant's delay of treatment and referral. (*Id.*)

19       Defendant filed a reply in support of the motion for summary judgment on March 25,

20  2021. (ECF No. 48.) According to Defendant, Plaintiff's deliberate indifference arguments are

21  conclusory, his version of events is not supported by the medical record, and he has not raised a

22  genuine, material dispute of fact. (*Id.* at 2-6.) As to Plaintiff's damages, Plaintiff does not have

23  medical expertise and has not proffered any medical opinion. (*Id.* at 5-6.) Additionally, when

24  Plaintiff was asked at his deposition if any medical provider told him that the limitations in his

25  wrist were due to the delay in surgery rather than the break itself, Plaintiff responded "I haven't

26  asked."[4] (*Id.* at 6.)

27  _____

28      [4] Defendant did not submit copies of the portions of Plaintiff's deposition that allegedly contain this statement.

The Court held a hearing on the motion on April 1, 2021. (ECF No. 49.) Counsel Benjamin Rudin appeared telephonically on behalf of Plaintiff and counsel Vickie Whitney appeared telephonically on behalf of Defendant. (*Id.*)

## IV.   LEGAL STANDARDS

### A.   Summary Judgment Generally

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca* ("*Albino II*"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045

1    (9th Cir. 1989).

2          In reviewing the evidence at the summary judgment stage, the Court "must draw all

3    reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros*

4    *de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only

5    draw inferences, however, where there is "evidence in the record . . . from which a reasonable

6    inference . . . may be drawn . . . ."; the court need not entertain inferences that are unsupported by

7    fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-

8    movant is to be believed . . . ." *Anderson*, 477 U.S. at 255. Moreover, the Court must liberally

9    construe Plaintiff's filings because he is a prisoner proceeding *pro se* in this action. *Thomas v.*

10   *Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

11         In reviewing a summary judgment motion, the Court may consider other materials in the

12   record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v.*

13   *San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

14         **B.      Deliberate Indifference to Serious Medical Needs**

15         "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

16   must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091,

17   1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff

18   to show (1) a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition

19   could result in further significant injury or the unnecessary and wanton infliction of pain,'" and

20   (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting

21   *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations

22   marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th

23   Cir. 1997) (*en banc*)).

24         In *Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988), the Ninth Circuit set out the applicable

25   standard for claims of deliberate indifference. When a prisoner seeks injunctive or declaratory

26   relief, "the causal link between the deliberate indifference and the eighth amendment deprivation

27   is broader and more generalized than when that same prisoner seeks damages for the harmful

28   effects of such conditions." *Id.* at 633. In contrast, "[w]hen plaintiffs ... seek to hold an individual

7

1    defendant personally liable for damages, the causation inquiry between

2    the deliberate indifference and the eighth amendment deprivation must be more refined." *Id.*

3    Therefore, in order to recover damages against a prison official for deliberate indifference, an

4    inmate must prove that the indifference "was the actual and proximate cause of the deprivation of

5    the inmates' eighth amendment right to be free from cruel and unusual punishment." *Id.* at 634.

6    Delay in medical treatment generally only constitutes deliberate indifference if it causes further

7    harm. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

8    **V.    ANALYSIS**

9        The Court first examines the causation element of Plaintiff's deliberate indifference claim.

10       Plaintiff argues that Defendant's delay in referring Plaintiff to a specialist for surgery

11   caused Plaintiff lasting damage, including an inability to pull anything above 25 lbs., or

12   sometimes as low as 15 lbs., to bend his left wrist all the way back, or to fully rotate it. (ECF Nos.

13   46 at 6.) In support of this argument, Plaintiff relies on his own deposition testimony regarding

14   what his orthopedic surgeon told him. (*Id.*; ECF No. 46-3 at 2-3.) Defendant, in turn, argues that

15   Plaintiff cannot show that the delay in surgery caused Plaintiff's injuries because Plaintiff does

16   not have medical expertise and has not submitted a medical opinion establishing causation. (ECF

17   No. 48 at 5-6.)

18       Because Plaintiff will ultimately bear the burden of proof on specific causation at trial,

19   Defendant may satisfy its burden at summary judgment by pointing to Plaintiff's lack of evidence

20   on this issue. *Soremkin v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Plaintiff must

21   present evidence from which a jury could conclude, without engaging in speculation, that his

22   wrist injuries resulted from Defendant's delay in referring him to an orthopedic specialist. *Brown*

23   *v. Johnson & Johnson,* 2019 WL 2577296, at *6 (E.D. Cal. June 24, 2019) (citation omitted).

24       Here, Plaintiff has not identified any medical records supporting his claim.  He has also

25   not provided any opinion from a medical expert, or any admissible testimony from a medical

26   provider. Instead, Plaintiff relies on his own deposition testimony in which he describes a

27   conversation with the orthopedic surgeon who performed his surgery. According to Plaintiff, the

28   surgeon told Plaintiff:

> there may be ongoing issues with the instability of [Plaintiff's] wrist, weakness in [his] wrist and possible more damage due to the bone being in there so long and [the surgeon] having to come back and do fixation surgery. It should have been done sooner, so immediately.

(ECF Nos. 46-3 at 2, 46-4 at 34.)

This account of what his surgeon told him is not sufficient evidence to raise a disputed issue of causation for trial.  First, Plaintiff's statements about what someone else told him are not admissible because they are hearsay. Plaintiff seeks to use the statements of an out-of-court declarant for the truth of the matter asserted in the statement. Fed. R. Evid. 801. This is hearsay and accordingly inadmissible. *U.S. v. Torres*, 794 F.3d 1053, 1059 (9th Cir. 2015); Fed. R.  Evid. 801(c), 802; *see also Johnson v. Peralta Community College Dist.*, No.C-94-4255 MMC (PJH), 1997 WL 227903 at *6 (N.D. Cal. April 28, 1997) ("Plaintiff may not prove that she is disabled by attesting, second hand, to her doctor's conclusions.").

To be considered on a motion for summary judgment, any evidence must be capable of reduction to an admissible form at trial. *Norse v. City of Santa Cruz,* 629 F.3d 966, 973 (9th Cir. 2010) ("While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence.") There is no indication that Plaintiff can reduce these hearsay statements to an admissible form for trial. *See, e.g., JL Beverage Co. LLC., v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (finding hearsay statements not subject to exception were properly disregarded at summary judgment where party did not argue the out-of-court declarants would be available to testify at trial).

Second, even if the Court determined that Plaintiff could reduce these out-of-court statements to admissible form at trial, to find an issue of fact, the Court would have to speculate that the statements Plaintiff references are competent expert testimony under Federal Rule of Evidence 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

9

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

Fed R. Evid. 702. Here, Plaintiff only references vague statements that the delay in surgery could cause Plaintiff more damage to his wrist. The Court is unable to determine whether these statements are based on sufficient facts or data or otherwise sufficiently reliable to withstand scrutiny under Rule 702. The out-of-court statements are simply too conclusory to raise an issue of fact as to specific causation. *Brown*, 2019 WL 2577296, at *7.

Further, Plaintiff's own opinion is insufficient to establish a causal connection between Defendant's conduct and his injury. Plaintiff is not qualified as a medical expert pursuant to Federal Rule of Evidence 702 and therefore his non-expert testimony is limited to statements "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Notably, when asked at his deposition whether Defendant should have taken a different course of medical treatment, Plaintiff responded:

It shouldn't have been different because she has her own opinions, she a professional. I can't speak to her method of treatment. I think that she should have took me at face value and treated me like a human being. That's it.

(ECF No. 42 at 62.)

Additionally, to the extent Plaintiff contends that the passage of time alone is sufficient and an expert opinion is not necessary to establish causation, the Court disagrees because the causal relationship between the delay and Plaintiff's evidence is not obvious. *Ayobi v. Romero*, 2021 WL 63275, at *5 (E.D. Cal. Jan. 7, 2021) ("[G]enerally plaintiff must prove causation by expert testimony except where there is an obvious causal relationship-one where injuries are immediate and direct.") (citation omitted). While it is certainly possible that the delay in surgery

10

1   could have exacerbated Plaintiff's wrist injuries, it is also possible that the break itself was a

2   serious injury that would not completely heal even with more immediate surgery . Because the

3   causal connection between Defendant's conduct and Plaintiff's injuries is not obvious, expert

4   evidence is required to meet Plaintiff's burden. *See Watson v. Sisto,* 2011 WL 5155175, at *22

5   (E.D. Cal. Oct. 28, 2011), *subsequently aff'd sub nom, Warson v. Swarthout,* 536 F.App'x 747

6   (9th Cir. 2013) ("[E]xpert opinion is generally required to establish deliberate indifference or, at a

7   minimum, to demonstrate the existence of a material factual dispute.") (citing *Hutchinson v.*

8   *United States,* 838 F.2d 390 (9th Cir.1988)).

9        Because Plaintiff has not submitted competent evidence from which a jury could find that

10   Defendant's delay in referring him to an orthopedic specialist caused his alleged wrist injuries,

11   the Court recommends granting Defendant's motion for summary judgment as to Plaintiff's

12   deliberate indifference claim.[5]

13        **VI.   RETALIAION CLAIM**

14        Finally, Plaintiff's opposition states that he agrees to dismiss his claim for retaliation in

15   violation of the First Amendment with prejudice. Defendant's reply indicates that she does not

16   oppose this request. A district court may not grant a motion for summary judgment simply

17   because the nonmoving party does not file opposing material.  *Martinez v. Stanford,* 323 F.3d

18   1178 (9th Cir.2003). However, "[w]here a motion for summary judgment has been served and a

19   stipulation of dismissal has not been filed, a plaintiff may request dismissal by court order." *Smith*

20   *v. Torres,* 2018 WL 6067244, at *1 (E.D. Cal. Nov. 20, 2018) (citing Fed. R. Civ. P. 41(a)). The

21   Court may issue the dismissal order on terms it considers proper. *Id.* (citing Fed. R. Civ. P.

22   41(a)(2)). In light of Plaintiff's statement that he wishes to dismiss his retaliation claim with

23   prejudice, and Defendant's lack of opposition to this request, the Court will recommend that this

24   claim be dismissed.

25   \\\

26        [5] Given the Court's recommendation regarding causation, the Court declines to make any findings and
27   recommendations regarding the second basis of Defendant's motion for summary judgment, i.e., whether
     Defendant's conduct amounted to deliberate indifference.  The Court notes that there are more disputes of fact on this
28   issue, based on a much fuller factual record. It appears to be a closer question as to whether Defendant has met its
     burden for summary judgment on this issue.

**VII.    CONCLUSION AND RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.    Defendant's motion for summary judgment (ECF No. 42) be granted as to Plaintiff's claim for deliberate indifference in violation of the Eighth Amendment;

2.    Plaintiff's request to dismiss his claims against Defendant for retaliation in violation of the First Amendment with prejudice be granted;

3.    Judgment be entered in favor of Defendant Armenta Tiggs-Brown; and

4.    The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 15, 2021**                    /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE